[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16317
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-03588-WBH


JOSHUA MCCLENDON,
DELVIA ROBINSON,
as next of friend of Joshua McClendon,

Plaintiffs-Appellants,

versus

DEPARTMENT OF JUVENILE JUSTICE, et al.,

Defendants,

CHRISTOPHER WILLIAMS,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(June 30, 2017)

Before ED CARNES, Chief Judge, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

After his probation was revoked, Joshua McClendon became a juvenile detainee at the Metro Regional Youth Detention Center in Atlanta, Georgia. While he was detained there, Christopher Williams, one of the Center's guards, slammed McClendon's cell door on his hand, crushing three of his fingers. McClendon brought this lawsuit against Williams and other defendants, asserting, among other things, a 42 U.S.C. § 1983 claim for use of excessive force in violation of the Eighth Amendment. The district court dismissed all claims except the Eighth Amendment excessive force claim, and then granted Williams' motion for summary judgment. McClendon appeals the district court's entry of summary judgment.[1]

Cells in the Center are fully enclosed rooms, without bars, and the cell doors are made of solid steel.[2] The only way to see into a cell from the outside is to look through a window in the cell door. At his deposition McClendon testified that light coming through the window in his door made it difficult for him to sleep. So he often jammed a blanket between the door and the door frame so that it would drape over the window and block the light.

---

[1] McClendon does not appeal the dismissal of his other claims, and the other defendants (other than Williams) are not parties to this appeal.

[2] Unlike in many jails, detainees in the Center are not literally "behind bars."

2

On the night of the incident, Williams performed a routine check on all the cells in McClendon's wing of the Center.  According to McClendon's testimony, Williams knocked on his door, unlocked it, and opened it while telling McClendon to take down the blanket that was covering the window.  McClendon began to comply, but while he was pulling the blanket Williams slammed the door on his hand.  The door crushed three of McClendon's fingers and resulted in the amputation of part of his middle finger.

Williams submitted into evidence a videotape recorded by a security camera outside McClendon's cell.  The video shows Williams making his rounds and stopping at McClendon's door.  Williams unlocks the door, which flies open so quickly that it must have been pushed from the inside by McClendon.  The door continues swinging open until it is stopped by Williams' foot.  It then remains ajar for about one second before Williams begins trying to shut it.  McClendon pushes against the door and is able to prevent Williams from shutting it for another second or two, but Williams is eventually able to slam it closed.  Finally, the door pops open slightly for a moment, and then is shut completely.

The district court granted summary judgment to Williams.  It concluded that, based on the evidence in the record, "no jury could reasonably find in [McClendon's] favor."

3

"We review de novo a district court's grant of summary judgment and draw all inferences and review[ ] all evidence in the light most favorable to the non-moving party." Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1318 (11th Cir. 2012) (quotation marks omitted). "Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. (quotation marks omitted). For a dispute of material fact to be "genuine," the nonmoving party must point to sufficient evidence such that "a reasonable jury could return a verdict for [him]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). In cases where a video in evidence "obviously contradicts [p]laintiff's version of the facts, we accept the video's depiction instead of [p]laintiff's account," Pourmoghani-Esfahani v. Gee, 625 F.3d 1313, 1315 (11th Cir. 2010), and "view[ ] the facts in the light depicted by the videotape," Scott v. Harris, 550 U.S. 372, 380–81, 127 S. Ct. 1769, 1776 (2007).

To prove an Eighth Amendment claim of excessive force by a guard, the plaintiff must show that "force was applied" by the defendant "maliciously and sadistically for the very purpose of causing harm." Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). Negligence or deliberate indifference on the part of the defendant is not enough to sustain a claim in this context. Id. As the Supreme Court has explained, "[t]he infliction of pain in the course of a prison security

4

measure . . . does not amount to [an Eighth Amendment violation] simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084 (1986).

Based on the evidence in the record, no reasonable jury could find that Williams acted "maliciously and sadistically for the very purpose of causing harm." See Campbell, 169 F.3d at 1374. At this stage, the facts must be viewed "in the light depicted by the videotape," see Scott, 550 U.S. at 381, 127 S. Ct. at 1776, and the tape shows that McClendon pushed open his cell door quickly and forcefully, as if he were attempting to escape his cell, and held it open as Williams tried to close it. In light of that, it is not clear that Williams' response — slamming the cell door — was unreasonable, let alone "malicious and sadistic," as required to sustain an excessive force claim under the Eighth Amendment. As a result, there was no genuine issue of material fact as to whether Williams violated McClendon's constitutional rights. Summary judgment was proper. See Hamilton, 680 F.3d at 1318.

McClendon also contends that he raised a genuine issue of material fact as to whether Williams was deliberately indifferent to his serious medical need because Williams did not immediately treat his injuries. But he did not assert a deliberate indifference claim in his second amended complaint, and he cannot "raise new

5

claims at the summary judgment stage" or on appeal.  See Gilmour v. Gates,

McDonald & Co., 382 F.3d 1312, 1314–15 (11th Cir. 2004).  If he wished to assert

a deliberate indifference claim, the proper procedure was to seek to amend his

complaint once again in the district court.  Id. at 1315.  He failed to do that.

Because he did not properly raise his deliberate indifference claim in the district

court, we will not consider it.  See id. at 1314–15.

   **AFFIRMED.**